REVENUE CABINET, Commonwealth of Kentucky, Appellant,

v.

H.E. O'DANIEL, Sr.; and Lucy M. O'Daniel, Appellees.

and

Billy Curtsinger; Freda Curtsinger; Charles M. Polin; and Travis Bush, Appellants,

v.

Revenue Cabinet, Commonwealth of Kentucky; and Dana Bynum Mayton, Appellees.

No. 2001–SC–1032–DG, 2002–SC–0204–TG.

Supreme Court of Kentucky.

Jan. 20, 2005.

Michael D. Kalinyak, Kentucky Revenue Cabinet, Division of Legal Services, Frankfort, Counsel for Revenue Cabinet, Commonwealth of Kentucky and Dana Bynum Mayton.

H. Edward O'Daniel, Springfield, Phillip J. Shepherd, Frankfort, Counsel for H.E. O'Daniel, Sr.; Lucy M. O'Daniel; Billy Curtsinger; Freda Curtsinger; Charles M. Polin; and Travis Bush.

Opinion of the Court by Justice KELLER.

## I. INTRODUCTION

In both of these appeals, motor vehicle owners challenge the Revenue

Cabinet's 1995 ad valorem tax[1] assessments[2] for their vehicles. Because the subject vehicles, although purchased in late December 1994, were not registered in their owners' names until after January 1, 1995, the vehicle owners contend that they are not liable for the 1995 taxes. Conversely, the Revenue Cabinet claims that because the vehicle owners were the undisputed owners on January 1, they are liable for the taxes. Are the vehicle owners liable for the 1995 ad valorem taxes? Because the owners were allowed by statute a fifteen-day grace period from the purchase date to register the vehicles, and because, statutorily, only *the owner of record* on January 1, 1995 was liable for the taxes, we hold that the vehicle owners are not liable for the 1995 ad valorem taxes.

## II. BACKGROUND

### A. *Revenue Cabinet v. O'Daniel, 2001–SC–1032–DG*

On December 26, 1994, H.E. O'Daniel, Sr. and Lucy M. O'Daniel ("the O'Daniels") purchased a 1994 Lincoln Town Car from Crossroads Ford in Frankfort. On that date, the dealer gave the O'Daniels the keys and a properly executed Application for Title/Registration ("VTR").[3] The O'Daniels took possession and began operating the vehicle on the Commonwealth's highways that day. Since Kentucky allows an owner a grace period for registering a purchased vehicle,[4] they did not register it with the county clerk's office until January 19, 1995,[5] on which date the county clerk duly entered the O'Daniels' vehicle into Kentucky's Automated Motor Vehicle Registration System ("AVIS")[6]

For the 1995 tax year, like prior years, the Revenue Cabinet initially assessed motor vehicles registered in AVIS as of January 1, 1995 for ad valorem tax purposes. But, since the O'Daniels had not yet registered their 1994 Lincoln Town Car, it was not at first assessed for 1995 ad valorem taxes. In June of 1995, however, the Revenue Cabinet, operating under a new policy that ownership, and thus tax liability, attaches at the point of sale, decided to implement a compliance program to identify and make assessments for ad valorem tax purposes on vehicles that were purchased in late 1994, but not registered by January 1, 1995 by virtue of the statutory grace period for registering vehicles. The

---

1. "The term 'ad valorem' literally means 'according to the worth,' and is used in taxation to designate an assessment of taxes against property at a certain rate upon its value." *Revenue Cabinet v. Estate of Field*, 864 S.W.2d 930, 932 (Ky.App.1993) (citing *Thomas v. City of Elizabethtown*, 403 S.W.2d 269, 272 (Ky. 1965)); accord BLACK'S LAW DICTIONARY 1469 (Bryan A. Garner ed., 7th ed., West 1999) ("[A]d valorem tax" is "[a] tax imposed proportionally on the value of something (esp. real property), rather than on its quantity or some other measure.").

2. "Tax assessment" is "[o]fficial valuation of property for purposes of taxation." BLACK'S LAW DICTIONARY *Assessment (3)* 112 (Bryan A. Garner ed., 7th ed., West 1999).

3. The form is entitled "Vehicle Transaction Record, Application for Title/Registration" and the parties use the abbreviation "VTR."

4. KRS 186A.095 (amended 1996) ("An owner of a vehicle for which a certificate of registration or title, and license plate must be obtained shall be allowed a fifteen (15) day grace period from the date on which he purchased a vehicle or brings a vehicle into the Commonwealth from another state, during which time the owner shall apply for and obtain a certificate of registration or title, and a license plate in his name.").

5. Although this date was several days after expiration of the fifteen-day grace period, it is without significance because the grace period extended well past January 1, 1995.

6. KRS Chapter 186A.

Revenue Cabinet began the program with the 1995 tax year and identified approximately 6,000 to 8,000 such vehicles—one of which was the O'Daniels' 1994 Lincoln Town Car. Prior to this time, the Revenue Cabinet's policy was to assess taxes on the basis that liability attached at the time of registration. In accordance with its compliance program, the Revenue Cabinet sent the O'Daniels a bill for the 1995 taxes in October of 1996.

The O'Daniels unsuccessfully appealed the Revenue Cabinet's assessment to the Kentucky Board of Tax Appeals. They then appealed the Tax Board's decision to the Marion Circuit Court, where the trial court, recognizing that the Legislature had created a tax loophole as a result of the grace period, reversed the tax assessment. The Revenue Cabinet appealed the trial court's decision, contending that ownership for tax purposes occurs at the point of sale rather than at the point of registration. The Court of Appeals disagreed and affirmed the trial court, holding that the Revenue Cabinet only had authority to assess ad valorem taxes against the January 1 "owner of record" and that since the O'Daniels' vehicle was not registered in their names on January 1, 1995, they were not the "owners of record" on the day taxes were assessed. The Court of Appeals, therefore, held that the O'Daniels were not responsible for the 1995 taxes. We granted the Revenue Cabinet's motion for discretionary review.

### B. *Curtsinger v. Revenue Cabinet, 2002–SC–0204–TG*

Under circumstances similar to those described above in the *Revenue Cabinet v. O'Daniel* appeal ("the *O'Daniel* appeal"),

the Revenue Cabinet assessed 1995 ad valorem taxes on vehicles owned by Billy and Freda Curtsinger, Charles M. Polin, and Travis Bush ("the *Curtsinger* Appellants"), the Appellants in this appeal ("the *Curtsinger* appeal"). The *Curtsinger* Appellants filed a class action lawsuit in the Franklin Circuit Court challenging the assessments that they received pursuant to the Revenue Cabinet's compliance program.[7] The Franklin Circuit Court granted the Revenue Cabinet a summary judgment, which the vehicle owners appealed. At the Revenue Cabinet's request, we accepted transfer of this appeal so that it could be consolidated and heard with the *O'Daniel* appeal.

Given that the *O'Daniel* appeal involves similar factual circumstances and the same dispositive legal issue as the *Curtsinger* appeal, we will focus primarily on the *O'Daniel* appeal—the first appeal docketed in this Court—to avoid unnecessary repetition in this opinion.

### III. ANALYSIS

The resolution of these appeals depends upon the interpretation of several statutes. In 1995, KRS 134.810(4) and KRS 186.021(2) stated that the "*owner of record on January 1* of any year shall be liable for taxes" on a motor vehicle:

#### KRS 134.810(4)

When a motor vehicle has been transferred before registration renewal or before taxes due have been paid, *the owner of record on January 1 of any year shall be liable for the taxes on the motor vehicle,* except as hereinafter provided.[8]

---

7. Because the Franklin Circuit Court summarily ruled against the individual Appellants, it did not determine whether a class action may be maintained by them.

8. KRS 134.810(4) (amended 2002) (emphasis added).

KRS 186.021(2)

Pursuant to KRS 134.810(4), *the owner of record on January 1 of any year shall be liable for taxes due on a motor vehicle.*[9]

And KRS 186A.095 allowed a vehicle owner "a fifteen (15) day grace period from the date on which he purchased a vehicle" to obtain "a certificate of registration or title ... in his name."[10]

■ It is this Court's duty when interpreting statutes to give effect to the General Assembly's intent, but "no rule of interpretation ... require[s] us to utterly ignore the plain ... meaning of words in a statute."[11] In fact, "[t]he plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source."[12] We "ascertain the intention of the legislature from words used in enacting statutes rather than surmising what may have been intended but was not expressed."[13] In other words, we assume that the "[Legislature] meant exactly what it said, and said exactly what it meant."[14] Only "when [it] would produce an injustice or ridiculous result" should we ignore the plain meaning of a statute.[15]

■ KRS 134.810(4) and KRS 186.021(2) are clear: *the owner of record on January 1* is liable for the ad valorem taxes due on a vehicle. And KRS 186A.095 is equally as clear; a vehicle owner is allowed a fifteen (15) day grace period from the date of purchase to register it in his or her name. The O'Daniels purchased their vehicle on December 26, 1994. They took advantage of KRS 186A.095's grace period and registered the vehicle well after January 1, 1995. As a result, the O'Daniels were not the "owners of record" of the vehicle on January 1, 1995, and therefore, they are not liable for the ad valorem taxes for that year. The same holds true for the *Curtsinger* Appellants.

KRS 186.010(7)(a) defines a vehicle "owner" as (1) "a person who holds the legal title of a vehicle or [ (2) ] a person who pursuant to a bona fide sale has received physical possession of the vehicle ...."[16] A person holds the "legal title" to a vehicle if it is registered in his or her name.[17] Here, the vehicle was not yet

9. KRS 186.021(2) (amended 2002) (emphasis added).

10. KRS 186A.095 (amended 1996).

11. *Gold Trading Stamp Co. v. Commonwealth*, 224 Ky. 136, 5 S.W.2d 910, 911 (1928); *cf. Powers v. Brewer*, 238 Ky. 579, 38 S.W.2d 466, 469 (1931) ("[T]he principle that the statute is to be liberally construed does not mean that its provision can be entirely ignored.").

12. RONALD BENTON BROWN & SHARON JACOBS BROWN, STATUTORY INTERPRETATION: THE SEARCH FOR LEGISLATIVE INTENT § 4.2, at 38 (NITA, 2002) [hereinafter "STATUTORY INTERPRETATION"].

13. *Flying J Travel Plaza v. Commonwealth of Ky., Transp. Cabinet, Dep't of Highways*, 928 S.W.2d 344, 347 (Ky.1996) (citing *Ky. Ass'n of Chiropractors, Inc. v. Jefferson Co. Med. Soc'y*, 549 S.W.2d 817 (Ky.1977)).

14. *Stone v. Pryor*, 103 Ky. 645, 45 S.W. 1136, 1142 (1898) (Waddle, S. J., dissenting).

15. STATUTORY INTERPRETATION, *supra* note 12, § 4.3, at 40; *see Johnson v. Frankfort & C.R. R.*, 303 Ky. 256, 197 S.W.2d 432, 434 (1946).

16. KRS 186.010(7)(a).

17. *State Auto. Ins. Co. v. Reynolds*, 32 S.W.3d 508, 510 (Ky.App.2000) ("KRS 186.010(7)(a) defines 'owner' ... as 'a person who holds the legal title of a vehicle ....' It is undisputed in the record that the 1989 Nissan Pulsar was registered under James's name and that he held legal title to the car."); *Nantz v. Lexington Lincoln Mercury Subaru*, 947

registered in the O'Daniels' names on tax assessment day, i.e., January 1, and accordingly they did not hold the legal title to the vehicle on that date. In other words, they were not the owners of record[18] on January 1, 1995. But, based on the second part of this definition, the Revenue Cabinet contends that the O'Daniels owned the vehicle on January 1, 1995 and for that reason they are liable for the taxes. We agree that the O'Daniels owned the vehicle on January 1, 1995, but we disagree with the Revenue Cabinet's conclusion that ownership alone is sufficient to subject the O'Daniels to tax liability for the vehicle. Although under the second part of KRS 186.010(7)(a)'s definition the O'Daniels undisputedly owned the vehicle on January 1, it is equally undisputed that they were not the *owners of record* on that date, and under KRS 134.810(4) and KRS 186.021(2), it is "the owner of record on January 1" who is liable for the taxes on the vehicle. The Legislature could have simply provided in KRS 134.810(4) and KRS 186.021(2) that the "owner on January 1" shall be liable for the ad valorem taxes on motor vehicles; instead, it restricted "owner" with the prepositional phrase "of record." By so doing, the Legislature demonstrated its intent to limit the meaning of "owner" for the purpose of tax liability only to the owner *of record* on January 1. The O'Daniels were not the owners of record on January 1; they did not hold legal title to the vehicle on that date. Thus they are not liable for the taxes.

The Revenue Cabinet cites *Nantz v. Lexington Lincoln Mercury Subaru*[19] in support of its position. Its reliance is misplaced. In *Nantz*, the issue was "when [does] title to a motor vehicle pass[ ] from a commercial car dealer to a buyer under Kentucky's titling and registration statutes ... *for the purpose of determining liability insurance coverage.*"[20] The Court held that "when the proper legal documents are transferred from the dealer to the buyer, the responsibility *for insurance coverage* on the part of the dealer ceases."[21] Thus *Nantz* is authority on ownership *for purposes of insurance coverage*, not for tax liability, which is the issue in the present appeals.

The Revenue Cabinet contends that its compliance program merely identifies vehicles that were mistakenly omitted from the tax rolls and requires the owners of the vehicles to pay the taxes. We disagree for two reasons. First, we would note that the vehicles in these appeals are not omitted property. In 1995, "omitted property" was defined as "[a]ny personal property which has not been listed for taxation, for any year in which it is taxable, by April 15 of that year ...."[22] The O'Daniels' vehicle was "listed for taxation" on January 19, 1995; thus it was not omitted property. Second, the Revenue Cabinet "cannot by

---

S.W.2d 36, 41 (Ky.1997) ("Simpson, who had only possession of the automobile, was not the owner of the vehicle because legal title had not been properly transferred to him."); *Tharp v. Security Ins. Co. of New Haven, Conn.,* 405 S.W.2d 760, 766 (Ky.1966) ("For the purposes of the Kentucky Financial Responsibility Law the owner of a motor vehicle, having legal title to it, is the person in whose name the vehicle is registered.").

18. *See* BLACK'S LAW DICTIONARY (8th ed.2004) (defining "record owner" as "a

property owner in whose name the title appears in the public records").

19. 947 S.W.2d 36 (Ky.1997).

20. *Id.* at 37 (emphasis added).

21. *Id.* at 38–39 (emphasis added) (citing *Potts v. Draper,* 864 S.W.2d 896 (Ky.1993); *Cowles v. Rogers,* 762 S.W.2d 414 (Ky.App.1988)).

22. KRS 132.290(1) (amended 2002).

its own rules and regulations, amend, alter, enlarge or limit the terms of legislative enactment[s]." [23] The Legislature enacted statutes that imposed tax liability on vehicle owners of record on January 1. The Revenue Cabinet cannot adopt a program—contrary to the statutes—that creates tax liability for owners who lawfully register their vehicles after that date.

■ Except for constitutional restrictions,[24] the assessment of ad valorem taxes on motor vehicles is a matter of statutory law.[25] Vehicles are assessed on January 1 of the tax year by using information the county clerks have entered into the AVIS system.[26] Vehicles that are registered after January 1 do not appear in the AVIS system at the time the assessment is made for the current year. Because the Legislature allows buyers a fifteen-day grace period from the time of purchase to register their vehicles with the appropriate county clerk,[27] vehicles that were purchased in late December 1994 might not have been entered into the AVIS system by January 1, 1995 and thus would have "escaped" the tax for 1995. The applicable tax statutes [28] specifically provided that the "owner of record" on January 1 is responsible for the tax. Although the Legislature amended the statutes in 2002 to comport with the Revenue Cabinet's view that ownership for tax purposes occurs at the time of sale rather than at the time of registration,[29]

the amendment cannot be applied retroactively.[30]

To summarize, the language of KRS 134.810(4) and KRS 186.021(2) was quite clear: the owner of record on January 1, 1995 was liable for the ad valorem taxes due on a vehicle. The Legislature said it not once, but twice. The O'Daniels were not the owners of record of the Lincoln Town Car on that date since they had taken advantage of KRS 186A.095's grace period and registered it in their names on January 19, 1995. Accordingly, neither the O'Daniels nor the *Curtsinger* Appellants are liable for the 1995 ad valorem taxes on their vehicles.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals in the *O'Daniel* appeal (2001–SC–1032–DG), and we reverse the circuit court's summary judgment in the *Curtsinger* appeal (2002–SC–0204–TG) and remand it for further proceedings in accordance with this Opinion.

COOPER, GRAVES, JOHNSTONE, SCOTT and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., dissents by separate opinion.

---

**23.** *Camera Center, Inc. v. Revenue Cabinet,* 34 S.W.3d 39, 41 (Ky.2000) (citing *Brown v. Jefferson County Police Merit Board,* 751 S.W.2d 23 (Ky.1988)).

**24.** *See* Ky. Const. §§ 3, 170, 171, 172, 174.

**25.** *See, e.g.,* KRS 132.020, 132.485, 134.810, 186.021, 186A.030.

**26.** KRS 132.485(1)(a), 186.021(2) (amended 2002), 186A.030.

**27.** KRS 189A.095 (amended 1996).

**28.** KRS 134.810(4), 186.021(2) (amended 2002).

**29.** 2002 Ky. Acts ch. 316 §§ 1, 3.

**30.** KRS 446.080(3) ("No statute shall be construed to be retroactive, unless expressly so declared."); *Magic Coal Co. v. Fox,* 19 S.W.3d 88, 94 (Ky.2000) ("Unless the legislature clearly indicates otherwise, legislation is not intended to affect the legal consequences of events which occurred before its enactment.").

Dissenting opinion by Chief Justice LAMBERT.

Respectfully, I dissent.

A cardinal principle of statutory construction is that courts refrain from a construction that would produce a ridiculous or absurd result.[1] In my view, the majority opinion violates this principle.

Throughout, the majority opinion repeats the "owner of record" language in the statutes, but nowhere is there any explanation as to why the Legislature would have created a gaping hole in this ad valorem tax statute for the benefit of a handful of taxpayers and to the detriment of all other taxpayers. I suggest that the "owner of record" language is nothing more than boilerplate to describe "owner;" that "of record" is utterly meaningless and was placed in the statute by sheer inadvertence.

As noted in the majority opinion, KRS 186.010(7)(a) defines "owner" as one who holds legal title or one who has received physical possession pursuant to a bona fide sale. Under either of these definitions, the O'Daniels were owners. The majority acknowledges as much, but reaches the mysterious conclusion that "We agree that the O'Daniels owned the vehicle on January 1, 1995, but we disagree with the Revenue Cabinet's conclusion that ownership alone is sufficient to subject the O'Daniels to tax liability for the vehicle." One must ask what possible reason the Legislature could have had for creating such a bizarre result, i.e., exemption of an owner from an ad valorem tax which is a tax on the value of owned property.

In *Nantz v. Lexington Lincoln Mercury Subaru,*[2] we held that for purposes of determining liability insurance coverage, "when the proper legal documents are transferred from the dealer to the buyer, the responsibility for insurance coverage on the part of the dealer ceases."[3] This is a practical conclusion based on the principle that responsibility for compliance with the law rests upon the actual owner of the property. Instead of applying this sound principle to the ad valorem tax at issue here, the majority has effectively placed responsibility on the prior owner, the automobile dealer who sold the vehicle, and required that dealer to pay ad valorem

---

**1.** *Executive Branch Ethics Com'n v. Stephens,* 92 S.W.3d 69 (Ky.2002). ("If there is any doubt from the language used by the legislature as to the intent and purpose of the law, then courts in interpreting the statute should avoid a construction which would be unreasonable and absurd in preference to one which is reasonable, rational, sensible and intelligent."); *Johnson v. Frankfort and Cincinnati,* 303 Ky. 256, 197 S.W.2d 432 (1946) ("The words of the statute are to be given their plain meaning unless to do so would constitute an absurd result."); *See Bailey v. Reeves,* 662 S.W.2d 832 (Ky.1984); *Cosby v. Commonwealth,* 147 S.W.3d 56 (Ky.2004). ("General principles of statutory construction hold that a court must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy."); *County of Harlan v. Appalachian Reg'l Healthcare, Inc.,* 85 S.W.3d 607, 611 (Ky.2002) ("No single word or sentence is determinative, but the statute as a whole must be considered.") *Id.* (In addition, "[w]e have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion."); *Bailey v. Reeves,* 662 S.W.2d 832, 834 (Ky.1984) (Moreover, "[i]n construing statutory provisions, it is presumed that the legislature did not intend an absurd result."); *Commonwealth, Central State Hosp. v. Gray,* 880 S.W.2d 557, 559 (Ky.1994) (The legislature's intention "shall be effectuated, even at the expense of the letter of the law."); and *Commonwealth v. Rosenfield Bros. & Co.,* 118 Ky. 374, 80 S.W. 1178, 1180 (Ky.1904).

**2.** 947 S.W.2d 36 (Ky.1997).

**3.** *Id.* at 38–39.

taxes on property which had been sold to another.